IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

HILDEGARD STREETT,

      **Plaintiff,**   **CIVIL ACTION NO. _____**

Vs.

COBB COUNTY, GEORGIA,

Defendants.

## COMPLAINT

Plaintiff Hildegard Streett ("Hildegard") files this Complaint, against Cobb County, Georgia, ("Cobb County") for violations of the Age Discrimination in Employment Act, 29 USC 623, and Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991, 42 USC 2000e et seq. ("Title VII").

1.

This is a civil rights complaint for discrimination against and retaliation against Hildegard in violation of Title VII and other applicable law.

2.

Plaintiff submits herself to the jurisdiction of the Court.

3.

Cobb County is a political division of the state of Georgia and is subject to the jurisdiction of this Court over its person.

4.

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. 1331 and 28 U.S.C. 1343.

5.

Venue is proper in this Court under 28 U.S.C. 1391 (b) (1) because the Defendant resides in the State of Georgia.

6.

Defendant is an "employer" under Title VII.

7.

Within 300 days of the beginning of the discriminatory acts complained of herein, the Plaintiff filed with the Equal Employment Opportunity Commission ("EEOC") a timely Charge of Discrimination alleging unlawful national origin discrimination in violation of Title VII, and Age Discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA").

8.

At the time the discriminatory acts complained of in this case occurred, Hildegard was over 55 years of age.

9.

Hildegard's National Origin is German, and she suffered discrimination from Defendant because of her National Origin.

10.

Hildegard complained to the Defendant Employer because she was being discriminated against as to pay and promotions because of her age and national origin, and Hildegard was retaliated against because of her assertion of her rights not to be discriminated against because of her age and national origin.

11.

The date on which Hildegard's charge of discrimination was added to the EEOC portal was November 29, 2021. See Exhibit A.

12.

Hildegard tried to make the charge on November 3, 2021, but she was stopped by an apparent EEOC manpower shortage, and Linda Brown of EEOC told Hildegard she should fill out the FORM 5A packet Brown emailed to Hildegard, and one of EEOC's intake representatives would contact Hildegard at an uncertain time in the future, "because there are no appointments available before your deadline..." See Exhibit B.

13.

Hildegard did in fact complete and submit to EEOC what EEOC deemed an "Pre-Charge Inquiry" on November 3, 2021.

14.

Norberta Pendleton of EEOC added to the EEOC Portal Hildegard's 2021-11-03 inquiry on November 26, 2021. No explanation was provided by the EEOC for the delay in adding to the Portal the "Pre-Charge Inquiry" Form it had received from Hildegard on November 3, 2021, but on the EEOC Portal it was noted that the claim of employment discrimination was filed on 11/032021, and was assigned EEOC # 410-2022-00745. See Exhibit A.

15.

When Pendleton then added the Charge to the EEOC Portal for Hildegard's claim, she used the original number, 410-2022-00745, now as the Charge Number, and still noted on the Portal Entry that the Charge had been commenced on November 3, 2021.  See Exhibit A.

16.

Georgia has a state statute, OCGA 45-19-29 et seq., the "Georgia Fair Employment Practices Act of 1978," which prohibits national origin discrimination and age discrimination in the following terms:

It is an unlawful practice for an employer:

1. To fail or refuse to hire, to discharge, or otherwise to discriminate against any individual with respect to the individual's compensation, terms, conditions, or privileges of employment because of such individual's … national origin….or age;
2. To limit, segregate, or classify his employees in any way which would deprive or tend to deprive an individual of employment opportunities or otherwise adversely affect an individual's status as an employee because of such individual's ….national origin… or age….

## 17.

An "employer" is defined by OCGA 45-19-22(5) to include any department, board, bureau, commission, authority or other agency of the state which employs 15 or more employees within the state for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

## 18.

Cobb County has had far more than 15 employees during all periods relevant to her claims against Cobb County. Therefore, OCGA 45-19-29 applies to Cobb County, as it is an "employer" as defined by the statute.

## 19.

Indeed, in Cobb County's "No Harassment and No Discrimination Policy," created in June 1992 and last amended August 2023, Cobb County has a table of Governing Laws, Regulations, & Standards, specifically stating and admitting that the Georgia Fair Employment Practices Act of 1978 applies to it. See Exhibit C.

## 20.

Generally, 42 USC 2000e-5(c) directs an individual such as Hildegard to file her claim first with the state agency, which in this case is called the Commission on Equal Opportunity, and its Equal Employment Division. OCGA 45-19-24. The Commission on Equal Opportunity has an administrator appointed by the governor.

21.

The administrator's function is to encourage fair treatment for public employees such as Hildegard, and to discourage unlawful discrimination in public employment, such as Hildegard's employment in the Cobb County Tax Commssioner's office.

22.

Public employees under OCGA 45-19-36 are permitted to file a written, sworn complaint with the administrator stating that an unlawful practice has been committed.

23.

Under the Georgia Fair Employment Practices Act of 1978, such a complaint is heard by a Special Master.

24.

The Georgia statute does not displace Title VII.

25.

Pursuant to EEOC regulations and work sharing agreements with the State of Georgia, whichever entity, the EEOC or the Commission on Equal Opportunity, receives the charge first will handle it, although it typically will also file it with the other. See 29 C.F.R. 1601.13(a)(3) and (b)(1); EEOC, Fair Employment Practices Agencies (FEPAs) and Dual Filing, https://www.eeoc.gov/employees/fepa.cfm; EEOC v. Commercial Office Prods. Co., 486 U.S. 107, 112 (1988).

26.

The existence of Georgia Commission on Equal Opportunity does not displace Title VII; but its existence DOES extend the period for the filing of Hildegard's charge to 300 days. In other words, because Hildegard's charge can complain of violations that had happened for the last 300 days from the date the charge was commenced, November 3, 2021-- back to approximately January 17, 2021.

27.

Hildegard's Notice of Right to Sue Letter was issued on August 10, 2023. See Exhibit C. This action is filed within 90 days of the receipt of the letter.

28.

Hildegard had been harassed because of her National Origin for generally the entire time period between January 17, 2021 until she resigned on May 14, 2021, and as a party of her ongoing harassment and retaliation claim, she can rely on evidence of incidents that happened more than 300 days before her charge was filed.

29.

From January 17, 2021 until she resigned on May 7, 2021, Hildegard was being discriminated against by Cobb County based on her protected age—she was denied promotions and denied pay and retirement contributions she was due, compared to younger workers who received the promotions and better pay raises. The age discrimination adversely affected Hildegard's health and caused her to suffer exhaustion, and, with no end to the discrimination in sight, she resigned.

30.

Hildegard opposed and protested against the discrimination she suffered as to compensation and promotions based on age directly as far back as early 2017, and she was continually harassed and retaliated against by Cobb County in direct response to the assertion of her rights. In fact, Glenda Lerner, Hildegard's supervisor, publicly mocked Hildegard in meetings with other staff members

frequently, and Carla Jackson, the Tax Commissioner, excoriated Hildegard several times when Hildegard raised claims of discrimination to Jackson's face.

31.

Hildegard's German accent is pronounced, and her bearing and style of working were efficient and no nonsense. working, which was quite efficient. Hildegard carried a far greater workload than her non-Germanic tormentors inside the Cobb County Tax Commissioner's office, and when Hildegard complained of discrimination, in addition to hot, loud denials of discrimination from her superiors, Hildegard received an even more crushing workload.

32.

When Hildegard stood up for another worker whose national origin was India, who had similarly been denied pay increases and promotions, National Origin discrimination against Hildegard intensified. In that worker's situation, Hildegard's superiors specifically Hildegard that employees not born in the United States would not receive promotions.

## COUNT ONE: AGE DISCRIMINATION AGAINST HILDEGARD IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C. 621, et seq.

33.

The actions of Cobb County in giving Hildegard contra-factual reviews which adversely affected her pay on a current basis and also the amounts she was able to set aside for retirement violated the Age Discrimination in Employment Act, 29 U.S.C. 621, et seq. ("ADEA").

34.

At the time Hildegard was suffering adverse employment actions, Hildegard was over 55 years of age.

35.

Cobb County specifically gave substantially younger and similarly situated workers promotions over Hildegard and better pay increases, because they were younger than Hildegard, specifically because they were substantially younger.

36.

Cobb County is liable for the violations of Hildegard's rights under the ADEA because her age was one but-for cause of its decisions to limit Hildegard's pay below that of the younger contemporaries and to deny her promotions in favor of younger people.  Babb v. Secretary, Dept. of Veterans Affairs, 992 F. 3d 1193 (11th Cir. 2021).

37.

Hildegard is entitled to legal and equitable relief from Cobb County

such as will effectuate the purposes of the ADEA.

38.

District courts enjoy "the historic power of equity" to award lost wages to workmen unlawfully discriminated against such as Hildegard.

39.

Hildegard is entitled to a back pay award covering a period from January 17, 2021, to May 7, 2021, in an amount to be proven at trial, including but not limited to pay lost because of discrimination and retirement benefits lost because of reduced pay.

40.

Because Cobb County's violation of the ADEA against Hildegard was willful, Hildegard is also entitled to recover a liquidated damages award against Cobb County equal to Hildegard's back pay award.

41.

Hildegard is also entitled to equitable relief against Cobb County under the ADEA for discrimination committed by Cobb County against her, in the form of an award of lost front pay in lieu of reinstatement.

42.

Hildegard is also entitled to an award of reasonable attorneys' fees and costs under 29 U.S.C. 216(b):

The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

## COUNT TWO: RETALIATION UNDER THE ADEA

43.

Hildegard engaged in protected activity when she openly opposed Cobb County's age discrimination against her based on her age in conversations with the Cobb County Tax Commissioner and her immediate subordinates.

44.

EEOC Enforcement Guidance on Retaliation and Related Issues issued August 25, 2016 identifies two types of protected activity, "participation," and "opposition."

45.

Hildegard's complaints created the need for an investigation and constituted participation protected by the ADEA by actually claiming age discrimination prohibited by the ADEA directly to the Cobb County Tax Commissioner.

46.

In retaliation for the Complaints, the Cobb County Tax Commissioner refused to consider the complaints seriously, much less investigate them.

47.

The Eleventh Circuit has recognized that the protection of an employee in her participation and/or assistance in an investigation, proceeding or hearing of a claim of employment discrimination is extremely broad, in accordance with the statutory language which the Court has stated is so broad that it even protects persons accused of the discriminatory behavior, when they are participants in an investigation, proceeding or hearing.

The anti-retaliation provision is straightforward and expansively written. Congress chose the language "testified" and "participated in any manner" to express its intent about the activity to be protected against retaliation. The word "testified" is not preceded or followed by any restrictive language that limits its reach. As to "participated in any manner," the adjective "any" is not ambiguous; it has a well-established meaning. Earlier this year, the Supreme Court explained, "Read naturally, the word `any' has an expansive meaning, that is, `one or some indiscriminately of whatever kind.'" United States v. Gonzales, 520 U.S. 1, 5, 117 S.Ct. 1032, 1035, 137 L.Ed.2d 132 (1997)

(citation omitted). Here, as in Gonzales, "Congress did not add any language limiting the breadth of that word," so "any" means all. See id.

Merritt v. Dillard Paper Co., 120 F.3d 1181, 1186 (11th Cir. 1997).

48.

All of Hildegard's participation in any investigations of her complaints of ADEA violations by Cobb County, and her ability to voice the complaints, were protected by the ADEA's anti-retaliation provisions.

49.

Cobb County took materially adverse action against Hildegard in retaliation for her participation in a needed investigation of age discrimination by Cobb County, which was not even conducted in good faith.

50.

Hildegard also opposed Cobb County's age discrimination against her and against older employees in the Cobb County Tax Commissioner's Office. See Patterson v. Georgia Pacific, LLC, 11th Cir. No. 20-12733 (11th Cir.2022); Gogel v. Kia Motors Mfg. of Ga. Inc., 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc).

51.

The focus in considering whether there has been retaliation in response to "opposition" to discriminatory practices is on the actions or conduct the employee engaged in, which allegedly caused the retaliation against the employee.

52.

"Opposed" as used in the opposition clause "carries its ordinary meaning," which includes "to resist or antagonize; to contend against; to confront; resist; withstand." Crawford v. Metro. Gov't of Nashville & Davidson Cnty., 555 U.S. 271, 276 (2009) (cleaned up). Patterson, slip opinion p.18.

53.

Cobb County took materially adverse action against Hildegard in retaliation for her opposition to perceived age discrimination by Cobb County, by increasing her responsibilities and her workload but not her position, while giving her minimal pay increases, compared to younger workers who received better positions and pay, while delivering work product far short of what Hildegard delivered.

54.

A but-for cause of Cobb County's adverse employment actions against Hildegard was her demand that the long-standing pay discrimination she had endured be investigated on the basis that it had occurred because of age discrimination.

55.

A but-for cause of Cobb County's adverse employment actions against Hildegard  was her opposition to age discrimination occurring at Cobb County.

56.

Cobb County's actions against Hildegard would dissuade a reasonable worker from making or supporting a charge of discrimination.

57.

Accordingly, Hildegard is entitled to recover damages from Cobb County for retaliation under the ADEA.

58.

ADEA retaliation is an intentional tort. Accordingly, Hildegard is entitled to recover compensatory damages from Cobb County for pain and suffering, for emotional distress, for embarrassment from being harassed and for other damages Hildegard suffered while being harried with retaliatory increases in workload, while her co-workers were given far less work and responsibility. The damages will be in an amount to be proven at trial, on this separate retaliation claim, reaching far behind the 300-day deadline. .

59.

Hildegard is also entitled to recover punitive damages from Cobb County based on its specific intent to harm her by retaliating against her and its willful and wanton actions in retaliating against Hildegard taken with an entire want of care

evidencing Cobb County 's conscious indifference to the consequences of its actions, in an amount to be proven at trial.

## COUNT THREE: NATIONAL ORIGIN DISCRIMINATION AGAINST HILDEGARD

60.

Hildegard consistently earned excellent annual performance reviews during her entire career with Cobb County. Nonetheless, Cobb County failed to deliver to Hildegard the pay raises she earned, and the amounts she was able to set aside for retirement were lessened. Cobb County's failure to pay Hildegard properly in comparison to less proficient, indeed actually deficient, comparators, was because of her German national origin. Cobb County thus violated Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991, 42 USC 2000e et seq. ("Title VII").

.

61.

Hildegard suffered adverse employment actions at the hands of Cobb County because Hildegard's National Origin was Germany.

62.

Cobb County specifically gave non-German workers promotions over Hildegard and better increases, because they were not from Germany, as Hildegard was. The Tax Commissioner and other workers in the Tax Commissioner's office admitted to Hildegard that they engaged in national origin discrimination.

63.

Cobb County is liable for the violations of Hildegard's right to be free from national origin discrimination under Title VII because her national origin was one but-for cause of its decisions to limit Hildegard's pay below that of her non-German contemporaries and to deny her promotions in native United States citizens.  Babb v. Secretary, Dept. of Veterans Affairs, 992 F. 3d 1193 (11th Cir. 2021).

64.

Hildegard is entitled to legal and equitable relief from Cobb County such as will effectuate the purposes of Title VII.

65.

District courts enjoy "the historic power of equity" to award lost wages to workmen unlawfully discriminated against such as Hildegard.

66.

Hildegard is entitled to a back pay award covering a period from January 17, 2021, to May 7, 2021, in an amount to be proven at trial, including but not limited

to pay lost because of discrimination and retirement benefits lost because of reduced pay.

67.

Hildegard is also entitled to equitable relief against Cobb County under Title VII for discrimination committed by Cobb County against her, in the form of an award of lost front pay in lieu of reinstatement.

68.

Hildegard is also entitled to an award of compensatory and punitive damages against Cobb County in an amount to be proven at trial and awarded in the enlightened conscience of the jury for the intentional discrimination Cobb County committed against her.

69.

Hildegard is also entitled to an award of reasonable attorneys' fees and costs under 29 U.S.C. 216(b):

> The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

### COUNT FOUR: RETALIATION UNDER TITLE VII

70.

Hildegard engaged in protected activity when she openly opposed Cobb County's discrimination against her based on her national origin in conversations with the Cobb County Tax Commissioner and the Commissioner's immediate subordinates.

71.

EEOC Enforcement Guidance on Retaliation and Related Issues issued August 25, 2016 identifies two types of protected activity, "participation," and "opposition."

72.

Hildegard's complaints created the need for an investigation of National Origin Discrimination in Cobb County and constituted participation protected by Title VII by actually claiming national origin discrimination prohibited by Title VII directly to the Cobb County Tax Commissioner.

73.

In retaliation for Hildegard's complaints, the Cobb County Tax Commissioner refused to consider the complaints seriously, much less investigate them, she and Hildegard's Supervisor piled more work on Hildegard..

74.

The Eleventh Circuit has recognized that the protection of an employee in his participation and/or assistance in an investigation, proceeding or hearing of a claim of employment discrimination is extremely broad, in accordance with the statutory language which the Court has stated is so broad that it even protects persons accused of the discriminatory behavior, when they are participants in an investigation, proceeding or hearing.

> The anti-retaliation provision is straightforward and expansively written. Congress chose the language "testified" and "participated in any manner" to express its intent about the activity to be protected against retaliation. The word "testified" is not preceded or followed by any restrictive language that limits its reach. As to "participated in any manner," the adjective "any" is not ambiguous; it has a well-established meaning. Earlier this year, the Supreme Court explained, "Read naturally, the word `any' has an expansive meaning, that is, `one or some indiscriminately of whatever kind.'" United States v. Gonzales, 520 U.S. 1, 5, 117 S.Ct. 1032, 1035, 137 L.Ed.2d 132 (1997) (citation omitted). Here, as in Gonzales, "Congress did not add any language limiting the breadth of that word," so "any" means all. See id.

Merritt v. Dillard Paper Co., 120 F.3d 1181, 1186 (11th Cir. 1997).

75.

All of Hildegard's participation in investigations of her concerns of Title VII violations by Cobb County, and her ability to voice them, were protected by Title VII's anti-retaliation provisions.

76.

Cobb County took materially adverse action against Hildegard in retaliation for her participation in a needed investigation of national origin discrimination by Cobb County, which was not even conducted in good faith.

77.

Hildegard also opposed Cobb County's national origin discrimination against her and against a co-worker from India in the Cobb County Tax Commissioner's Office. See Patterson v. Georgia Pacific, LLC, 11th Cir. No. 20-12733 (11th Cir.2022); Gogel v. Kia Motors Mfg. of Ga. Inc., 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc).In the context of the co-worker, the Commissioner admitted her office engaged in national origin discrimination.

78.

The focus in considering whether there has been retaliation in response to "opposition" to discriminatory practices is on the actions or conduct the employee engaged in which allegedly caused the retaliation against the employee.

79.

"Opposed" as used in the opposition clause "carries its ordinary meaning," which includes "to resist or antagonize; to contend against; to confront; resist; withstand." Crawford v. Metro. Gov't of Nashville & Davidson County, 555 U.S. 271, 276 (2009) (cleaned up).

Patterson, slip opinion p.18.

80.

Cobb County took materially adverse action against Hildegard in retaliation for her opposition to perceived national origin discrimination by Cobb County, increasing her workload and responsibilities but not her position, and not paying her fairly, compared to workers who had been born in the United States, who received better positions and pay while delivering work product far short of what Hildegard delivered.

81.

A but-for cause of Cobb County's adverse employment actions against Hildegard was her demand that the long-standing pay discrimination she had endured be investigated on the basis that it had occurred because of national origin discrimination.

82.

A but-for cause of Cobb County's adverse employment actions against Hildegard was her opposition to admitted national origin discrimination occurring at Cobb County's Tax Commissioner's Office where she worked.

83.

Cobb County's actions against Hildegard would dissuade a reasonable worker from making or supporting a charge of discrimination.

84.

Accordingly, Hildegard is entitled to recover damages from Cobb County for retaliation under Title VII.

85.

Title VII retaliation is an intentional tort. Accordingly, Hildegard is entitled to recover compensatory damages from Cobb County for pain and suffering, emotional distress, embarrassment from being publicly mocked by Cobb County Tax Commissioner's Office Management, and being screamed at by Tax Commissioner Carla Jackson and Hildegard's Supervisor Glenda Lehner in place where co-employees heard the loud ruckuses, and other damages relating to Hildegard's diminished status with her native born co-workers, in an amount to be proven at trial, on this separate retaliation claim.

86.

Hildegard is also entitled to recover punitive damages from Cobb County based on it specific intent to harm her by retaliating against her, and because of Cobb County's willful and wanton actions in retaliating against Hildegard, with an entire want of care evidencing Cobb County's conscious indifference to the consequences of its actions, in an amount to be proven at trial.

## COUNT V: BREACH OF CONTRACT

87.

Hildegard was required annually to acknowledge and agree to Cobb County's No Harassment and Non-Discrimination Policy, a copy of which as Amended August 2023, is attached hereto as Exhibit D (the Policy").

88.

Cobb County conditioned Hildegard's continued employment on her agreeing to the policy, and therefore there was consideration for her agreement to the policy tendered by Cobb County, creating a contract between Hildegard and Cobb County,. Cobb County required Hildegard to make her agreement with Cobb County regarding No harassment and No Discrimination electronically once each year, and she always agreed when Cobb County requested her agreement.

89.

In making her contract with Cobb County, Hildegard obligated herself not to harass co-workers and not to discriminate against them, and she was the beneficiary

of Cobb County's agreement not to permit harassment of Hildegard or discrimination against Hildegard.

90.

Cobb County breached its contract with Hildegard by permitting her to be harassed as the contract defines "harassment" because of her national origin, on multiple occasions during the six year period preceding the filing of this suit, by offensive mocking of her Germanic origin, comments, specific statements to the effect non-native born employees in her office would not be promoted, and the deliberate increase in her workload in comparison to non-German born employees similarly situated, in response to her objections to the harassment.

91.

Employment decisions regarding Hildegard were made based on her national origin several times during the six year period prior to the filing of this Complaint, including denials of promotions and fair pay increases, and deliberate unreasonable increases in her workload because she challenged the decisions, and these events constituted "discrimination" as defined by the contract.

92.

Cobb County breached its agreement not to subject Hildegard to harassment and not to subject Hildegard to discrimination.

93.

Cobb County breached its contractual duty to Hildegard to investigate her allegations of discrimination and harassment reasonably, and to take appropriate action against the harassment and discrimination she suffered.

94.

Cobb County forcefully agreed not to tolerate retaliation against an individual such as Hildegard for reporting discrimination and harassment, but in breach of the contract, did allow Hildegard to be discriminated against and harassed.

95.

Hildegard is entitled to a judgment against Cobb County for vits breaches of the contract between them, in an amount to be proven at trial.

**WHEREFORE**, Hildegard prays that the court grant her a judgment against Cobb County  as follows:

(1) A judgment against Cobb County in the form of a back pay award covering the period January 17, 2021 through her resignation date of May 7, 2021, , in an amount to be proven at trial, including but not limited to lost pay, and diminishment of retirement benefits.

(2) Because Cobb County's violation of the ADEA against Hildegard was willful, a judgment for Hildegard against Cobb County for liquidated damages equal to Hildegard's back pay award against Cobb County.

(3) A judgment for Hildegard against Cobb County delivering equitable relief against Cobb County to Hildegard under the ADEA for age discrimination committed by Cobb County, in the form of lost front pay in lieu of reinstatement.

(4) A judgment for Hildegard against Cobb County for reasonable attorneys' fees and costs under 29 U.S.C. 216(b).

(5) A judgment for Hildegard against Cobb County for retaliation under the ADEA for compensatory damages for pain and suffering, emotional distress, embarrassment, and damage to Hildegard's relationships with co-workers and supervisors prematurely ending her employment with Cobb County, plus punitive damages under OCGA 51-12-5.1 in an amount to be proven at trial, on the separate ADEA retaliation claim.

(6) A judgment for Hildegard against Cobb County for back pay covering a period from January 17, 2021, to May 7, 2021, in an amount to be proven at trial, including but not limited to pay lost because of national origin discrimination by Cobb County and retirement benefits lost because of reduced pay caused by national origin discrimination.

(7) A judgment for Hildegard against Cobb County delivering equitable relief against Cobb County to Hildegard pursuant to Title VII for national origin discrimination committed by Cobb County, granting equitable relief to Hildegard against Cobb County in the form of an award lost front pay in lieu of reinstatement

(8) A judgment for Hildegard against Cobb County for compensatory and punitive damages in an amount to be proven at trial for the intentional national origin discrimination Cobb County committed against her, plus an award of reasonable attorneys fees and costs under 29 U.S.C. 216(b).

(9) A judgment for Hildegard against Cobb County for retaliation under the Title VII for compensatory damages for pain and suffering, emotional distress, embarrassment from being fired, and damage to Hildegard's relationships with co-workers and supervisors prematurely ending her employment with Cobb County, plus punitive damages under OCGA 51-12-5.1 in an amount to be proven at trial, on the separate Title VII retaliation claim.

(10) a judgment against Cobb County for vits breaches of the contract between them, in an amount to be proven at trial.

(11) Such other and further relief as the Court deems just and proper.

PLAINTIFF HEREBY DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.

Respectfully submitted this 4th day of November, 2023.

**DALZIEL LAW FIRM**
/s/ *Charles M. Dalziel, Jr.*
Charles M. Dalziel, Jr.
Georgia Bar No. 203730
680 Village Trace NE
Building 20E
Marietta GA 30067
(404) 735-0438
chuck@dalziellawfirm.com
Attorney for Plaintiff

## My Charge

**EEOC Number: 410-2022-00745**                                        **Status: Charge Closed**

The charge of employment discrimination filed on **11/03/2021** with the U.S. Equal Employment Opportunity Commission (EEOC) by **Hildegard Streett** against **COBB COUNTY TAX COMMISSIONER** is available for you to view online

View Representative     View My Information

## My Documents

If you have documents supporting your charge, please upload them using this portal. Documents that you send and any that EEOC may send to you (including your Charge of Discrimination and the respondent's Position Statement, if you request a copy) are listed below. You can open a document to review it or download and save it.

**Be sure you save all documents related to your charge, including Email correspondence.** Your charge and documents related to it will be available to you online until 90 days after EEOC closes it.

Click using this portal to upload documents.

Upload

| Name | Type | Added On | Added By |
|---|---|---|---|
| 2023-08-10 Streett v. Cobb County Tax Commissioner NRTS (410-2022-00745).pdf | Closure Notice/NRTS | 08/10/2023 | TERRY TOLLEFSON |
| Re_ FW_ What is the status of my EEOC Inquiry 410-2022-00745 _.msg | Correspondence with Charging Party Attorney/Representative | 05/30/2023 | TERRY TOLLEFSON |
| Cobb No Harassment No Discrimination Policy | Evidence Provided by Charging Party | 05/30/2023 | Charging Party |
| Hildegards Two Resignation Letters | Evidence Provided by Charging Party | 05/30/2023 | Charging Party |
| Hildegard Streett-Response to Cobb County Position Statement | Rebuttal to Position Statement | 05/29/2023 | Charging Party |
| Streett, Hildegard - Position Statement | Position Statement | 04/17/2023 | Respondent Respondent |
| RE_ What is the status of my EEOC Inquiry 410-2022-00745 _.msg | Correspondence with Charging Party Attorney/Representative | 03/27/2023 | TERRY TOLLEFSON |
| What is the status of my EEOC Inquiry 410-2022-00745 _.msg | Correspondence with Charging Party Attorney/Representative | 03/27/2023 | TERRY TOLLEFSON |
| EEOC Inquiry 410-2022-00745.msg | Correspondence with Charging Party Attorney/Representative | 02/03/2023 | TERRY TOLLEFSON |
| 8054426_ConfidentialityAgreementSigned-CP | Charging Party Confidentiality Agreement | 03/21/2022 | Publicportal User |
| 8054426_AgreementToMediateSigned-CP | Charging Party Agreement to Mediate | 03/21/2022 | Publicportal User |
| 2021-12-15 RE COD_410-2022-00745.pdf | Charge of Discrimination | 12/16/2021 | Norberta Pendleton |
| 2021-12-15 Email from R's Attorney RE COD.pdf | Correspondence To/From Charging Party's Attorney | 12/16/2021 | Norberta Pendleton |
| 2021-12-14 Email from CP's Attorney RE LOR.pdf | Correspondence To/From Charging Party's Attorney | 12/15/2021 | Norberta Pendleton |
| 2021-12-14 RE LOR from CP's Attorney.pdf | EOA/Letter of Representation From Charging Party's Attorney | 12/15/2021 | Norberta Pendleton |
| 2021-12-10 Email from CP's Attorney RE Request for ADC.pdf | Correspondence To/From Charging Party's Attorney | 12/13/2021 | Norberta Pendleton |
| 2021-12-09 Email to CP's Attorney RE LOR&Form 5.pdf | Correspondence To/From Charging Party's Attorney | 12/09/2021 | Norberta Pendleton |
| 2021-11-03 RE 290A_410-2022-00745.pdf | EEOC Inquiry Questionnaire (Form 290A) | 11/29/2021 | Norberta Pendleton |
| 2021-11-03 RE 5A_410-2022-00745.pdf | Form 5A, Charge of Discrimination | 11/29/2021 | Norberta Pendleton |
| 2021-11-03 RE 290A_410-2022-00745.pdf | EEOC Inquiry Questionnaire (Form 290A) | 11/26/2021 | Norberta Pendleton |
| 2021-11-03 Email to PCP-Streett RE Inquiry #410-2022-00745.msg | Correspondence To/From Charging Party | 11/03/2021 | Linda Brown |

## Additional Information

**If you have questions**
You may find answers in the Frequently Asked Questions (FAQ)

If you still have questions about charge or the status of your charge, please contact your investigator directly at **MARK.MADDOX@EEOC.GOV**. Please use Charge Number **410-2022-00745** on all correspondence and communications.

Back to My Cases



EXHIBIT

A

tabbies

# charles dalziel

| | |
|---|---|
| **From:** | LINDA BROWN |
| **Sent:** | Wednesday, November 3, 2021 8:30 AM |
| **To:** | saints77@comcast.net |
| **Subject:** | Inquiry #410-2022-00745 |
| **Attachments:** | FORM 5A PACKET.pdf |

Good Morning Mrs. Streett,

Per our telephone discussion and because there are no appointments available before your deadline, please read and fill out the attached forms and email them to atdointake@eeoc.gov, **by today, November 3, 2021, (Do not email these forms to me)**. Place your inquiry number in the box at the top of the form. Once received, your forms will be assigned to one of our intake representatives who will contact you. As discussed your case will be temporarily closed until you return your forms. When assigned, the Intake Representative will re-open it.

CRTIU

**PLEASE DO NOT RESPOND TO THIS EMAIL**



1

 **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Atlanta District Office**
100 Alabama Street, SW, Suite 4R30
Atlanta, GA 30303
1-800-669-4000
Website: www.eeoc.gov

## <u>DETERMINATION AND NOTICE OF RIGHTS</u>
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 08/10/2023

**To:** Mrs. Hildegard Streett
972 Chippendale Trail
Marietta, GA 30064
Charge No: 410-2022-00745

EEOC Representative and email:      MARK MADDOX
Investigator
mark.maddox@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 410-2022-00745.

On behalf of the Commission,

Digitally Signed By: Darrell E. Graham
08/10/2023
Darrell E. Graham
District Director


**EXHIBIT**

tabbies®

C

**Cc:**
Mark A Adelman
Cobb County Government
100 Cherokee Street 2nd Floor
Marietta, GA 30090

Charles  Dalziel
Dalziel Law Firm
31 Atlanta Street Suite 200
Marietta, GA 30060

LaToya Drakeford
Dalziel Law Firm
31 Atlanta Street S.E. Suite 200
Marietta, GA 30060


Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request

Enclosure with EEOC Notice of Closure and Rights (01/22)

identifying your request as a "FOIA Request" for Charge Number 410-2022-00745 to the District Director at Darrell E. Graham, 100 Alabama Street, SW Suite 4R30

Atlanta, GA 30303.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 410-2022-00745 to the District Director at Darrell E. Graham, 100 Alabama Street, SW Suite 4R30

Atlanta, GA 30303.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.



# No Harassment and No Discrimination Policy

**Effective Date: June 1992**
**BOC Amended: 4/2000; 4/2006; 12/2011; 9/2020; 8/2023**

| | |
|---|---|
| **Owner** | Board of Commissioners |
| **Reviewer(s)** | Human Resources |
| **Approver(s)** | Chief Human Resources Officer |
| **Related Policies** | Conduct and Performance Policy |
| **Related Standards** | Rules and Standards of the Cobb County Civil Service Board |
| **Storage Location** | iCobb |
| **IS Last Review Date** | August 2023 |
| **IS Next Review Date** | August 2025 |
| **IS Review Cycle** | Every 2 years |

## 1. PURPOSE

Cobb County is committed to a work environment in which all individuals are treated with respect and dignity. Individuals have the right to work in a professional atmosphere that promotes equal employment opportunities and prohibits unlawful discriminatory practices, including harassment. Therefore, Cobb County expects that all relationships among persons will be business-like and free of bias, prejudice and harassment. This policy establishes safeguards for employees against harassment and discrimination in the workplace that are consistent with federal employment law and guidelines enforced by the Equal Employment Opportunity Commission and sets forth avenues for reporting allegations of harassment and/or discrimination.

## 2. SCOPE

Board of Commissioners' Employees. If you have questions regarding this policy, contact Human Resources.

## 3. GOVERNING LAWS, REGULATIONS & STANDARDS

| Guidance | Section |
|---|---|
| Title VII of the 1964 Civil Rights Act | 42 USC 2000e, as amended by the Civil Rights Act of 1991 |
| Americans with Disabilities Act of 1990 (ADA); ADA Amendments Act of 2008 | Title I (P.L. 101-336) |
| The Age Discrimination in Employment Act of 1967 (ADEA) | (P.L. 101-433) |
| Georgia Equal Employment for Persons with Disabilities | O.C.G.A. 34-6A-1 |
| Georgia Fair Employment Practices Act of 1978 | O.C.G.A. 45-19 |
| Guidelines of the Equal Employment Opportunity Commission (EEOC) | |

## 4. DEFINITIONS

A. Under this policy, the term "harassment" includes, but is not limited to, offensive slurs, jokes, comments, gestures, pictures, posters, objects or graffiti, and any other offensive verbal, graphic, or physical conduct relating to an individual's race, color, sex (which includes pregnancy, sexual orientation and gender identity), religion, national origin, citizenship, age, or disability. Communications that are harassing include, but are not limited to, those conveyed in person, in writing, via email, text message, social media, or any other form of electronic communication. Such harassment is prohibited when it creates an intimidating, hostile or offensive work environment that unreasonably interferes with an individual's work performance.


EXHIBIT
D



# No Harassment and No Discrimination Policy

B. Under this policy, "harassment" includes specifically "sexual harassment," which is a form of discrimination. "Sexual harassment" includes engaging in speech or conduct of a sexual nature which is known or should reasonably be known to be unwelcome. It includes, but is not limited to, sexual advances, requests for sexual favors, sexual remarks, suggestive comments and gestures, the display of sexually suggestive pictures, posters, objects or graffiti, offensive physical contact or touching, and other verbal, graphic, or physical conduct of a sexual nature. Such conduct is prohibited when it explicitly or implicitly affects an individual's employment, unreasonably interferes with an individual's work performance, or creates an intimidating, hostile, or offensive work environment.

C. Under this policy, the term "discrimination" includes making employment decisions on the basis of an individual's race, color, sex (which includes pregnancy, sexual orientation and gender identity), religion, national origin, citizenship, age, veteran status, or disability or engaging in practices that have the effect of discriminating against individuals on the basis of their race, color, sex, religion, national origin, citizenship, age, veteran status, disability, or any other classification protected by law in matters of employment.

## 5. POLICY

Cobb County does not and will not tolerate harassment or discrimination of its employees. Toward this end, Cobb County will strive to create an environment free of harassment and discrimination. Included in this approach is the requirement of mandatory No Harassment/No Discrimination training for all Board of Commissioners' employees and Elected Official departments that have opted to adopt this policy, including supervisors, managers and department/agency heads, within ninety (90) days of their hire date.

No supervisor or other member of management has the authority to suggest to any employee that the employee's continued employment or future advancement will be affected in any way by that employee's entering into (or refusing to enter into) any form of personal relationship with a supervisor or member of management. Supervisors or other members of management who are found to have engaged in such behavior will be subject to disciplinary action, according to this policy.

Cobb County is committed to taking prompt and reasonable steps to investigate allegations of harassment and/or discrimination and to taking appropriate corrective action to eliminate harassment and/or discrimination. Harassment or discrimination can be perpetrated by employees, vendors, contractors, or members of the community. Conduct prohibited by this policy is unacceptable in the workplace and in any work-related setting outside the workplace, including but not limited to business trips, business meetings and other business-related social events.

Cobb County will not tolerate retaliation against an individual for reporting violations of this policy and/or for participating in an investigation of a complaint.

If Cobb County determines that an employee's conduct has violated this policy, the County will take steps to ensure the conduct is effectively addressed, and any employee found to have engaged in harassing, discriminatory or retaliatory conduct will be subject to disciplinary action, up to and including termination. Further, a policy violation not resulting in termination will be taken into consideration in any performance appraisal or promotional decision.

## 6. PROCEDURES

A. Employees should not assume that the County is aware of any problems they may be experiencing or that the County is aware of any problems being experienced by other employees. It is the responsibility of employees to bring any complaints or concerns to the County's attention so that they may be addressed. An effective No Harassment No Discrimination policy depends on all employees working together to address this very important subject; therefore, the following alternate avenues are available to employees to report acts they believe to be discriminatory or harassing:



# No Harassment and No Discrimination Policy

(1) Employees who believes they have been harassed or discriminated against by any County employee, contractor, vendor, or member of the general public, must report the matter to someone in their chain of command. Those receiving the complaint must then immediately report the complaint to Human Resources for review and/or investigation. As an alternative to the requirements for reporting outlined above, any employee who believes they or any other individuals have been harassed or discriminated against by any party may contact the Chief Human Resources Officer, the Employee Relations Specialist, the County Attorney or the County Manager.

(2) Employees who have knowledge or information that any other individual has been harassed or discriminated against by any individual listed in Section (A)(1) above must follow the reporting structure as outlined in Section (A)(1) above.

(3) Employees who believes that their complaint has not been handled appropriately, must immediately contact the Chief Human Resources Officer.

(4) In addition, Cobb County encourages individuals who believe they are being subjected to such conduct, if they feel comfortable, to promptly advise the offender that their behavior is unwelcome and to request that it be discontinued. Employees are encouraged to document their notice to the offender, including the date, time and manner in which the employee notified the offender that the behavior is unwelcome. Often this notice alone will resolve the problem. Cobb County recognizes, however, that an individual may prefer to pursue the manner through the above outlined complaint procedures.

B. Complaints will be promptly, thoroughly, and impartially investigated by Human Resources, as determined by the Chief Human Resources Officer and/or the County Attorney. When notified, employees will be required to participate and cooperate in an investigation and employees will be required to cooperate and provide full and truthful information. Failure to cooperate in an investigation, including the requirement to provide truthful information, may result in disciplinary action, up to and including termination. Once reported, complaints of harassment and/or discrimination cannot be withdrawn by the complaining employee(s).

C. Where violations of this policy have occurred, timely and appropriate disciplinary action, up to and including termination, will be taken. While some petty slights, annoyances, or isolated incidents may not rise to the level of severe or pervasive behavior that would violate this policy, these behaviors may violate other Cobb County policies, and will be addressed promptly.

D. Complaints will be kept as confidential as possible within the confines of a reasonable investigation.

E. No employee will be retaliated against for voicing a complaint in good faith, or for participating in an established complaint resolution process. Anyone who intentionally supplies false or misleading information (to include the original complaint), or who attempts to harass, intimidate or retaliate against an employee for filing a complaint, or for providing information in connection with a complaint will be subject to disciplinary action, up to and including termination of employment.

## 7. EXCEPTIONS
Exceptions to this policy must be justified and approved in advance by the Board of Commissioners.

## 8. NON-COMPLIANCE
Violations of this policy may include disciplinary action according to applicable County policies.



# No Harassment and No Discrimination Policy

| Version ID | Revision Date | Author | Reason for Revision |
|---|---|---|---|
|  | 06-1992 |  | Adoption |
|  | 04-2000 |  | Revision |
|  | 04-2006 |  | Revision |
|  | 12-2011 |  | Revision |
|  | 09-2020 | Human Resources | Revision |
| v.1.0.2020 | 10-2020 | Human Resources | Reformat |
| v.1.0.2023 | 08-2023 | Human Resources | Revision |